IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DENISE SHIVERY**<br>Bellefonte, PA 16823<br><br>Plaintiff,<br><br>v.<br><br>**PENNSYLVANIA STATE UNIVERSITY**<br>201 Old Main<br>University Park, PA 16802<br><br>Defendant. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

### I. INTRODUCTION

Plaintiff, Denise Shivery, brings this employment action against Defendant Pennsylvania State University ("Defendant" or "Penn State"). Plaintiff was retaliated against because she engaged in protected activity by complaining of unlawful sex discrimination and participating in an investigation into complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"). Plaintiff seeks all damages, including economic loss, compensatory, and punitive damages, and all other relief under applicable federal, state, and local law as this Court deems appropriate.

### II. PARTIES

1. Plaintiff, Denise Shivery, is a female individual and citizen of the Commonwealth of Pennsylvania.

2. Defendant is a research university with campuses throughout Pennsylvania.

1

3. Defendant is engaged in an industry affecting interstate commerce and regularly conducts business in the Commonwealth of Pennsylvania.

4. At all times material hereto, Defendant employed more than fifteen (15) individuals.

5. At all times material hereto, Defendant acted as an "employer" within the meaning of the statutes which form the basis of this matter.

6. At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of the statutes which form the basis of this matter.

7. At all times material hereto, Defendant acted by and through its authorized agents, servants, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

**III.    JURISDICTION AND VENUE**

8. The causes of action which form the basis of this matter arise under Title VII and the PHRA.

9. The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

10. The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367.

11. Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

12. On or about October 22, 2020, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), and dual-filed with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of retaliation alleged herein.

Attached hereto, incorporated herein and marked as Exhibit 1 is a true and correct copy of the Complaint.

13. On or about March 8, 2022, the U.S. Department of Justice Civil Rights Division issued to Plaintiff a Notice of Right to Sue. Attached hereto, incorporated herein and marked as Exhibit 2 is a true and correct copy of that notice.

14. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV. **FACTUAL ALLEGATIONS**

15. Plaintiff commenced employment with Defendant on or around November 3, 2014.

16. Prior to the notice of her termination of employment on June 2, 2020, Plaintiff held the position of Compliance Specialist.

17. Plaintiff last reported to Sandra Weaver (female), Youth Program Specialist.

18. Ms. Weaver reported to Kenya Mann Faulkner (female), Chief Ethics and Compliance Officer.

19. Ms. Faulkner reported to David Gray (male), Vice President of Finance and Business/Treasurer.

20. Before she began reporting to Ms. Weaver, Plaintiff reported directly to Ms. Faulkner.

21. Prior to Ms. Faulkner learning that Plaintiff had raised a complaint of discrimination, Ms. Faulkner supported Plaintiff's employment and advocated for her advancement within Defendant.

22. For example, on January 14, 2019, Ms. Faulkner gave Plaintiff a positive mid-year check-in performance evaluation.

23. In or around late January 2019, Ms. Faulkner told Plaintiff that she wanted Plaintiff to be promoted and filed paperwork with Human Resources ("HR") to have Plaintiff's position reviewed for promotion.

24. At the same time, Ms. Faulkner also told Plaintiff that she wanted Plaintiff to develop and be the head of a new sub-unit in the Office of Ethics and Compliance with two direct reports.

25. Ms. Faulkner further told Plaintiff that she wanted her to join the Ethics and Compliance Council and accompany Ms. Faulkner on outreach visits.

26. On or around February 5, 2019, Ms. Faulkner told Plaintiff that Clint Eury (male), HR Strategic Partner, had authorized her to offer Plaintiff a within-level salary increase, which would not require submission of a job review packet to HR.

27. Ms. Faulkner then told Plaintiff that she deserved more of a raise than what Mr. Eury was offering, so she declined the raise on Plaintiff's behalf without consulting Plaintiff.

28. Ms. Faulkner stated that she would be able to get Mr. Eury to do what she wanted because she "had dirt on him" and that Plaintiff should proceed with preparing a job review packet to submit to HR to obtain a higher salary increase.

29. Plaintiff observed Ms. Faulkner treating male employees in a more hostile, demeaning, and dismissive manner than she treated female employees.

30. Ms. Faulkner routinely made comments that were discriminatory based on sex.

31. Ms. Faulkner commented that certain male employees of Defendant were "shady," "weasels," "snakes," "weenies," "conniving," and "untrustworthy."

32. Plaintiff did not hear Ms. Faulkner refer to any female employees in this manner.

33. Ms. Faulkner ultimately removed job duties and direct reports from male employees and assigned them to female employees.

34. Ms. Faulkner excluded male members of the office from meetings and communications related to their job duties.

35. She also unjustly criticized and made fun of male employees.

36. Ms. Faulkner instructed Plaintiff to "stand up" to men.

37. On or around February 20, 2019, in a phone call with Gary Langsdale (male), University Risk Officer, Plaintiff complained that Ms. Faulkner was targeting male employees.

38. Plaintiff complained of the above comments and conduct by Ms. Faulkner toward male employees.

39. Mr. Langsdale instructed Plaintiff to contact Mr. Eury about her complaints.

40. Following the above phone call with Mr. Langsdale, Plaintiff contacted Mr. Eury by phone and complained that Ms. Faulkner was targeting male employees. Plaintiff reiterated the above comments and conduct by Ms. Faulkner toward male employees.

41. After Mr. Eury assured Plaintiff that she would be protected by Defendant's anti-retaliation policy, Plaintiff made the complaint "official," which Mr. Eury explained would result in an investigation.

42. On February 25, 2019, Mr. Gray wrote in an email to the Office of Ethics Compliance that HR would "be reaching out to meet with various staff members within the Office of Ethics & Complaint . . . to learn more . . . about the work environment and current challenges within" the office.

43. After she was contacted by Kenneth Korbich (male), Manager, Labor and Employee Relations, on February 27, 2019, Plaintiff met with Mr. Korbich, Bruce Crocefoglia (male), Senior Director for HR, and Amanda Jones (female), Senior Director for HR.

44. In this meeting, Plaintiff again complained that Ms. Faulkner was targeting male employees and shared the above comments and conduct by Ms. Faulkner toward male employees.

45. When they asked Plaintiff if she felt Ms. Faulkner was discriminating against men, Plaintiff said "yes."

46. Plaintiff was told that Mr. Korbich, Mr. Crocefoglia, Ms. Jones, and Lorraine Goffe (female), Vice President for HR and Chief HR Officer, recommended to Mr. Gray that Ms. Faulkner be terminated as a result of the findings of Defendant's investigation.

47. However, Defendant did not terminate Ms. Faulkner, and instead she remained employed by Defendant.

48. Following Plaintiff's sex discrimination complaints, Ms. Faulkner treated Plaintiff differently and worse, and in a more hostile and dismissive manner, than she treated Plaintiff before she complained of sex discrimination.

49. For example, Ms. Faulkner ignored Plaintiff and excluded her from communications relevant to her job duties.

50. Ms. Faulkner gave Plaintiff a lower raise than she said Plaintiff deserved before Plaintiff complained of sex discrimination.

51. Ms. Faulkner did not promote Plaintiff or appoint her to be the head of a new sub-unit in the Office of Ethics and Compliance as was discussed before Plaintiff complained of sex discrimination.

52.     Ms. Faulkner further did not select Plaintiff to join the Ethics and Compliance Council, nor did she ask Plaintiff to accompany her on outreach visits as she said she would before Plaintiff complained of sex discrimination.

53.     On July 24, 2019, in an email from Ms. Goffe and Stephen Dunham (male), Vice President and General Counsel, they stated that Defendant had received concerns about workplace conduct among certain employees in the Office of Ethics and Compliance, and therefore Defendant had retained outside counsel to conduct an investigation on behalf of Defendant.

54.     On August 11, 2019, Plaintiff received an email from the outside counsel stating that Plaintiff was "named in a complaint as an individual who may have engaged in some form of improper conduct or is otherwise a source of certain problems in the office."

55.     The following day, August 12, 2019, Plaintiff emailed Mr. Korbich, complaining that she was named in a complaint and accused of improper conduct and/or causing problems in the office in retaliation for participating in the investigation into Plaintiff's sex discrimination complaints.

56.     In a response email from Mr. Korbich, he did not deny that Plaintiff was being retaliated against for participating in the investigation into Plaintiff's sex discrimination complaints.

57.     On August 21, 2019, in a meeting with Defendant's outside counsel, Plaintiff complained that Ms. Faulkner was targeting male employees, favoring female employees over male employees, and retaliating against Plaintiff because of Plaintiff's complaints of sex discrimination by Ms. Faulkner.

58. The outside counsel asked Plaintiff what was wrong with women supporting women, and they told Plaintiff that there were "allegations" against Plaintiff made by Ms. Faulkner. They further stated that Plaintiff was a "problem," and asked her if she had ever "snooped" in Ms. Faulkner's office or "badmouthed" her to other employees.

59. On September 10, 2019, Mr. Gray stated in a staff meeting that Defendant found no "new behavior" or any misconduct on either side, and that they need to "hit the reset button."

60. On September 18, 2019, Ms. Faulkner announced in a staff meeting that Plaintiff would be transferred and assigned to report to Ms. Weaver, who would be reporting directly to Ms. Faulkner.

61. As a result of this announcement, from an organizational chart perspective, Defendant demoted Plaintiff.

62. On November 5, 2019, Ms. Weaver informed Plaintiff that Ms. Faulkner had told her that "someone" had complained that Plaintiff was "off-putting."

63. Before complaining of sex discrimination, Plaintiff had no performance or disciplinary issues.

64. Over the course of several months Plaintiff applied to numerous internal posted positions for which she was qualified. These positions included: (1) Compliance Specialist; (2) Manager of Information Technology and Learning Development; (3) Business Analyst and Quality Manager; (4) Business Process Analyst (Functional Operations Lead); (5) HR Specialist (Labor and Employee Relations Specialist); and (6) Marketing Communications Specialist (Production Coordinator).

65. Defendant failed to hire Plaintiff into any of these positions.

66. On January 31, 2020, Plaintiff complained to Ms. Weaver that she was being retaliated against for making sex discrimination complaints.

67. On March 10, 2020, Ms. Weaver unjustly criticized Plaintiff's performance. Ms. Weaver stated that Plaintiff had to watch her nonverbal expressions during meetings and that Plaintiff was unprofessional during the previous day's meeting. Ms. Weaver further stated that she knew that Plaintiff was unhappy and that it showed.

68. Ms. Weaver also stated that Defendant expected employees to grow and move on, and that maybe it was time for Plaintiff to move on.

69. Before complaining of sex discrimination, Plaintiff had no indication that her job was in jeopardy.

70. Plaintiff responded by complaining that Ms. Faulkner was continuing to pick on her and make false statements about her performance, and that Plaintiff feared retaliation. Plaintiff told Ms. Weaver that Ms. Faulkner had previously told her that once anyone crosses her, they were dead to her, and that Plaintiff was afraid she was continuing to target her because of Plaintiff's sex discrimination complaints.

71. Other employees who had complained of sex discrimination and retaliation in connection with Ms. Faulkner were transferred and/or termination and/or pushed out of employment with Defendant.

72. On April 28, 2020, Ms. Weaver again unjustly criticized Plaintiff's behavior and stated that Ms. Faulkner had asked her to speak with Plaintiff about Plaintiff's behavior.

73. On June 2, 2020, in a letter from Ms. Faulkner, and on a phone call with Ms. Weaver and Jennie Dare (female), Interim HR Strategic Partner, Defendant terminated Plaintiff's employment, effective June 30, 2020.

74. The stated reason for Plaintiff's termination was that Defendant was moving the Title IX training to another office and responsibilities were being restructured.

75. However, Title IX training was a particularly minimal part of Plaintiff's job duties and responsibilities.

76. Defendant's stated reason for Plaintiff's termination (transferring Title IX training duties) is false and pretext for retaliation.

77. On June 3, 2020, on a phone call with Ms. Dare, Plaintiff complained that she was being terminated in retaliation for her sex discrimination complaints. Plaintiff further told Ms. Dare that Title IX training was not a regular part of her job duties and responsibilities.

78. Ms. Dare responded that Ms. Faulkner was working on finding other opportunities within Defendant for Plaintiff, and that Mr. Korbich would investigate Plaintiff's retaliation complaints.

79. Thereafter, Plaintiff applied to numerous open, posted positions at Defendant for which she was qualified, including: (1) Associate Director of Alumni Relations, Alumni Relations and Stewardship Officer; (2) Marketing Communications Specialist; (3) HR Consultant; (4) Multimedia Specialist; (5) Non-Credit Learning Design Manager; (6) Marketing and Communications Manager (Director of Marketing and Communications); (7) Business Process Analyst 3; (8) Instructional Designer 2; (9) Instructional Designer; (10) Marketing Strategy Specialist 3; (11) Help Desk Manager (IT Manager); (12) Public Relations Specialist 2 (Crisis and Issues Specialist); (13) Administrative Support Coordinator 5; (14) Piazza Center Data Analyst; (15) Instructional Designer 2; (16) Multimedia Specialist; (17) HR Specialist 1 (Absence Management Specialist); (18) Investigations Compliance Specialist; (19) Education Program Coordinator 3; (20) Instructional Designer 2; (21) Affirmative Action Office

Investigator; (22) Marketing Communications Specialist 3; (23) Marketing Manager; and (24) Administrative Support Coordinator 4.

80. Defendant failed to hire Plaintiff into any of these positions.

81. Defendant did not offer Plaintiff any opportunities to remain employed at Defendant.

82. On June 30, 2020, Plaintiff's employment with Defendant officially ended.

83. On July 21, 2020, Defendant posted a Compliance Specialist position in the Office of Ethics and Compliance, which was the same job title Plaintiff held prior to her termination of employment.

84. On July 28, 2020, Plaintiff was informed that Defendant found no evidence of retaliation against her.

85. Plaintiff was not interviewed in connection with Defendant's investigation into her retaliation complaints.

86. Numerous employees told Plaintiff that they believed Plaintiff was being retaliated against because of her sex discrimination complaints.

87. Defendant subjected Plaintiff to a hostile work environment, demoted her, failed to promote and/or hire Plaintiff, and terminated Plaintiff's employment in retaliation for Plaintiff complaining of sex discrimination and participating in a discrimination investigation.

88. Plaintiff's complaining of discrimination and/or participating in a discrimination investigation was a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff, including subjecting Plaintiff to a hostile work environment, demoting Plaintiff, failing to promote and/or hire Plaintiff, and terminating Plaintiff's employment.

89. The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct and/or participated in a discrimination investigation would have discouraged a reasonable employee from complaining of discrimination and/or participating in a discrimination investigation.

90. Defendant failed to prevent or address the harassing and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of harassing and retaliatory conduct.

91. The conduct of Defendant, as set forth above, was severe or pervasive enough to make a reasonable person believe that the conditions of employment are altered and the working environment is hostile or abusive.

92. As a direct and proximate result of the retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

93. The conduct of Defendant, as set forth above, was outrageous under the circumstances, was done by and with the knowledge of upper management, and warrants the imposition of punitive damages against Defendant.

94. The conduct of Defendant, as set forth above, was willful and intentional.

## COUNT I - TITLE VII

95. Plaintiff incorporates herein by reference paragraphs 1 through 94 above, as if set forth herein in their entirety.

96. By committing the foregoing acts of retaliation against Plaintiff on the basis of her protected activity, Defendant has violated Title VII.

97. Said violations were willful and intentional and warrant the imposition of punitive damages.

98. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein.

99. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful acts unless and until this Court grants the relief requested herein.

100. No previous application has been made for the relief requested herein.

## COUNT II - PHRA

101. Plaintiff incorporates herein by reference paragraphs 1 through 100 above, as if set forth herein in their entirety.

102. Defendant, by committing the foregoing acts of retaliation, has violated the PHRA.

103. As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth herein.

104. Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendant's unlawful acts unless and until the Court grants the relief requested herein.

105. No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, Denise Shivery, and against Defendant Penn State. Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that

the Court grant the following relief to the Plaintiff by:

a) declaring the acts and practices complained of herein to be in violation of Title VII;

b) declaring the acts and practices complained of herein to be in violation of the PHRA;

c) enjoining and permanently restraining the violations alleged herein;

d) entering judgment against Defendant in favor of Plaintiff in an amount to be determined;

e) awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits and earnings capacity which Plaintiff has suffered and will continue to suffer as a result of Defendant's discriminatory and unlawful misconduct;

f) awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures and pain and suffering, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

g) awarding punitive damages to Plaintiff under Title VII;

h) awarding Plaintiff such other damages as are appropriate under Title VII and the PHRA;

i) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

j) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated: June 2, 2022    By: /s/ Stephen G. Console
Stephen G. Console
Rahul Munshi*
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
console@consolelaw.com
munshi@consolelaw.com

        215-545-7676
        215-814-8920 (fax)

Attorneys for Plaintiff,
Denise Shivery

*special admission pending